UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| TRUSTEES OF THE UNITED ASSOCIATION NATIONAL PENSION FUND, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Civil Action No. 1:23-cv-1016 DJN/IDD<br>) |
| JORDAN WELDING & FABRICATION LLC, | )<br>)<br>) |
| Defendant. | )<br>) |

**REPORT AND RECOMMENDATION**

This matter is before the Court on the Trustees of the United Association National Pension Fund ("NPF") and the Trustees of the International Training Fund's ("ITF") (collectively, "Plaintiffs" or "Funds"), Motion for Default Judgment ("Motion") against Defendant Jordan Welding & Fabrication LLC ("Jordan Welding" or "Defendant"), pursuant to Fed. R. Civ. P. 55(b) ("Motion"). Dkt. No. 13. After the Defendant failed to timely file a responsive pleading or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Upon consideration of the Complaint, Plaintiffs' Motion for Default Judgment, and the supporting documentation thereto, the undersigned Magistrate Judge makes the following findings and recommends that the Motion be **GRANTED** as to Counts I and II of the Complaint.[1]

---

[1] Plaintiffs do not seek Default Judgment on Count III of the Complaint. Mot. for Default J.

1

## I.     INTRODUCTION

On July 31, 2023, Plaintiffs filed this action under Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA"), *as amended*, 29 U.S.C. §§ 1132 and 1145, and Section 301 of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185. Compl. ¶ 4. ERISA allows parties to enforce provisions of collective bargaining agreements. In their Complaint, Plaintiffs seek delinquent contributions, interest, liquidated damages, and attorneys' fees and costs, pursuant to ERISA. *Id*.

### A.  Jurisdiction and Venue

This Court has subject matter jurisdiction over this case, pursuant to 28 U.S.C. § 1331, because this case arises under a federal law, ERISA. Further, jurisdiction is conferred upon this Court by Sections 502(e) and (f) of ERISA, 29 U.S.C. §§ 1132 (e) and (f).

The Court has personal jurisdiction over Defendant, pursuant to ERISA, which provides that any action brought under the statute "may be brought in the district where the plan is administered." *See* 29 U.S.C. § 1132(e)(2). ERISA also allows for nationwide service of process. *Id*. "Where a defendant has been validly served pursuant to a federal statute's nationwide service of process provision, a district court has personal jurisdiction over the defendant so long as jurisdiction comports with the Fifth Amendment." *Trustees of the Plumbers & Pipefitters Nat. Pension Fund v. Plumbing Services, Inc.*, 791 F.3d 436, 443, 2015 WL 3940851 (4th Cir. 2015). To support a Fifth Amendment challenge, a defendant must show that "the district court's assertion of personal jurisdiction over [them] would result in 'such extreme inconvenience or unfairness as would outweigh the congressionally articulated policy' evidenced by a nationwide service of process provision." *Id*. at 444 (quoting *Denny's, Inc. v. Cake,* 364 F.3d 521, 524 n. 2 (4th Cir. 2004)). A citizen of the United States would have difficulty showing such extreme inconvenience or unfairness. *Id*. Here, the Funds are administered in Alexandria, Virginia, Compl. ¶ 1, which is

within the Eastern District of Virginia, and, as discussed below, Defendant was properly served with process. Because Defendant has its principal place of business in Westbrook, Maine, Compl. ¶ 3, it would be "highly unusual" for Defendant to show that any "inconvenience will rise to a level of constitutional concern." *Plumbers & Pipefitters*, 791 F.3d at 444. Therefore, this Court has personal jurisdiction over Defendant.

Finally, venue is proper in this district, under 29 U.S.C. § 1132(e)(2) and 29 U.S.C. § 185(c), as the Plaintiff Funds are administered in this district, and their principal place of business is in Alexandria, Virginia. *See* Compl. ¶ 1. Therefore, venue is appropriate in this Court.

### B. Service of Process

Under 29 U.S.C. §§ 1132(e)(2) and 185(d), service of process is proper in any district where a defendant resides or may be found. Although §§ 1132(e) and 185(d) state where a defendant may be served, the Federal Rules of Civil Procedure provide the manner in which service must occur. Under Rule 4(h), service upon a corporation, partnership, or other unincorporated association shall be effected "in the manner prescribed by Rule 4(e)(1) for serving an individual; or by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ P. 4(h). Pursuant to Rule 4(e)(2)(B), service may be effected on an individual by "leaving a copy of [the summons and the complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). On August 17, 2023, a private process server served Defendant through hand delivery of the summons and Complaint to co-resident and father-in-law of Defendant's owner and registered agent, Chad Jordan, in Westbrook, Maine. Dkt. No. 7. Therefore, Plaintiffs properly served Defendant through its registered agent, pursuant to 29 U.S.C. §§ 1132(e)(2) and 185(d) and Rule 4(h).

### C. Grounds for Default

Plaintiffs initiated this action by filing the Complaint on July 31, 2023. Dkt. No. 1. Defendant has failed to appear, answer, or file any other responsive pleadings in this matter. On September 6, 2023, Plaintiffs filed a Request for Entry of Default with the Clerk, after being ordered to do so by the Honorable United States District Judge T.S. Ellis. Dkt. Nos. 8, 9. On September 7, 2023, the Clerk entered default against the Defendant. Dkt. No. 9. On February 15, 2024, Plaintiffs filed a Motion for Default Judgment, and the undersigned conducted a hearing on the matter on March 1, 2024. Dkt. Nos. 13, 18. After Defendant failed to appear at the hearing, respond to the Motion for Default Judgment, or otherwise defend this action, the undersigned Magistrate Judge took this matter under advisement to issue this Report and Recommendation. Dkt. No. 18.

## II.    EVALUATION OF PLAINTIFF'S COMPLAINT

Rule 55 of the Federal Rules of Civil Procedure provides for the entry of default judgment when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend. *See Music City Music v. Alfa Foods, Ltd.*, 616 F. Supp. 1001, 1002 (E.D. Va. 1985). Foremost, a court must be satisfied that the complaint states a legitimate cause of action. *See Anderson v. Found. for Advancement, Educ. & Emp't of Am. Indians*, 155 F.3d 500, 506 (4th Cir. 1998) (holding that the district court erred in granting default judgment to the plaintiff where the plaintiff failed to state a claim). A defendant in default concedes the factual allegations of the complaint. *See, e.g.*, *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001); *see also Partington v. Am. Int'l Specialty Lines Ins. Co.*, 443 F.3d 334, 341 (4th Cir. 2006) (noting default has the effect of admitting the factual allegations in the complaint). Default does not, however, constitute an admission of the adversary's conclusions of law and is not to be "treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d

1200, 1206 (5th Cir. 1975)). Instead, the court must "determine whether the well-pleaded allegations in [the plaintiff's] complaint support the relief sought in [the] action." *Id.*

Thus, in issuing this Report and Recommendation, the undersigned Magistrate Judge must evaluate Plaintiff's claims against the standards of Rule 12(b)(6) of the Federal Rules of Civil Procedure to ensure that the Complaint contains plausible claims upon which relief may be granted. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (explaining the analysis for examining a plaintiff's claims under a 12(b)(6) motion to dismiss). To meet this standard, a complaint must set forth sufficient factual matter, accepted as true, "to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In determining whether allegations are plausible, the reviewing court may draw on context, judicial experience, and common sense. *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (citing *Iqbal*, 556 U.S. at 679).

### III.  FACTUAL FINDINGS AND ANALYSIS

Upon a full review of the pleadings, the undersigned Magistrate Judge finds that Plaintiffs have established the following facts. Plaintiffs are the trustees of multi-employer employee benefit plans administered at 103 Oronoco Street, Alexandria, Virginia. Compl. ¶¶ 1-2. Defendant is a Maine LLC with its principal place of business in Westbrook, Maine. *Id.* ¶ 3. Defendant is an "employer in an industry affecting commerce," as defined by 29 U.S.C. § 1002(5). *Id.*

Defendant is signatory to the Collective Bargaining Agreement ("CBA") with Local Union No. 716 and is obligated to submit monthly remittance reports and fringe benefit contributions to Plaintiffs for all hours worked or paid on behalf of Defendant's covered employees. Compl. ¶¶ 5-8. Pursuant to the CBA, Defendant is obligated to abide by the terms and conditions of the NPF Trust Agreement and the ITF Trust Agreement that established the respective Funds. *Id* ¶¶ 14-15, 23. During the period of May 2021 through June 2023, Defendant employed certain employees within

5

Local Union No. 716 who were covered under the CBA. *Id.* ¶ 8. Defendant failed to make all obligatory contributions to NPF for work performed at the Defendant's request for the months of May 2021 and October 2021 and to ITF for the months of September 2021 and October 2021. *Id.* ¶¶ 11, 20. Further, Defendant failed to submit reports and pay contributions to both Plaintiffs for the months of November 2021 through June 2023. *Id.* ¶¶ 12, 21. Plaintiffs collectively seek $51,035.66 in delinquent contributions, liquidated damages, interest (as of February 9, 2024), and attorneys' fees and costs. *Id.* at 5-8; Mem. in Supp. of Mot. for Default J at 15.

Section 515 of ERISA, 29 U.S.C. § 1145, provides that employers obligated to make contributions to a multiemployer plan under the terms of a collectively bargained agreement shall make such contributions in accordance with the agreement. Section 502 of ERISA, 29 U.S.C. § 1132(g)(2), establishes the damages imposed on an employer who fails to make the required contributions. Under that provision, in an action to enforce Section 515, the court shall award the plan unpaid contributions, interests on the unpaid contributions, liquidated damages provided for under the plan not to exceed 20 percent of the unpaid contributions, reasonable attorneys' fees and costs, and other legal or equitable relief as the court deems appropriate. 29 U.S.C. § 1132(g)(2). If an employer breaches its contract with a labor organization, Section 301 of the LMRA, 29 U.S.C. § 185(a) provides that the organization may bring suit in any district of the United States having jurisdiction over the parties. 29 U.S.C. § 185(a).

### A. Count I – Contributions Owed to the NPF

According to the CBA and the NPF Trust Agreement, Defendant was obligated to provide reports to Plaintiffs and timely contribute to the Funds in accordance with those reports. Compl. ¶¶ 13-17. Defendant failed to timely remit all contributions owed to the NPF for the months of May 2021 and October 2021. *Id.* ¶ 11. The NPF filed a declaration in support of its Motion, reflecting that Defendant owes unpaid contributions in the amount of $4,427.75 for the months of May 2021 and

October 2021. *Id.* ¶ 11; Ex. 1, Decl. of Toni C. Inscoe on Behalf of the United Association National Pension Fund (hereinafter, "Inscoe NPF Decl.) ¶ 7.

Additionally, during the period of November 2021 through June 2023, Defendant failed to submit the requisite reports and failed to pay contributions to the NPF. Compl. ¶ 12. Because Defendant failed to submit any reports for this period, Plaintiffs are unable to determine the exact amount Defendant owes for these months. *Id.* However, the NPF Trust Agreement, as well as the NPF's Guidelines for Employer Participation, specify that when an employer fails to submit its remittance reports and contributions for at least two months, the NPF may project Defendant's monthly contributions for the unreported months, using the average of the monthly contributions from Defendant's previously submitted remittance reports. Mem. in Supp. of Mot. for Default J at 5; Inscoe NPF Decl. ¶ 9. The NPF declaration in support of its Motion, indicates that this amount is $29,600.00 for the months of November 2021 through June 2023. Inscoe NPF Decl. ¶¶ 10-11. The NPF Trust Agreement further provides that an employer who fails to pay the amounts required by the CBA "shall be considered delinquent" and that the NPF "may assess liquidated damages against any delinquent employer in the amount of 10% of the amount due . . . [and] to pay interest at a rate of up to 18% per annum, on the amount due from the date of delinquency until the date of payment." Compl. ¶ 15. Accordingly, with the unpaid contributions owed for the months of May 2021 and October 2021, Defendant owes the NPF a total of $34,027.75 in unpaid contributions as well as $6,008.94 in interest (as of February 9, 2024), and $3,402.78 in liquidated damages. Inscoe NPF Decl. ¶¶ 7, 11, 14-15. Therefore, the undersigned finds that Defendant owes a total of $43,439.47 to the NPF as a result of its delinquent contributions.

### B. Count II – Contributions Owed to the ITF

According to the CBA and the ITF Trust Agreement, Defendant was required to provide reports and timely contribute to the ITF in accordance with those reports. *Id.* ¶¶ 21-23. Defendant

failed to timely remit all contributions owed to the ITF for the months of September 2021 and October 2021. Compl. ¶ 20. The ITF filed a declaration in support of its Motion, reflecting that Defendant owes unpaid contributions in the amount of $106.95 for the months of September 2021 and October 2021. *Id.* ¶ 20; Ex. 2, Decl. of Toni C. Inscoe on Behalf of the Int'l Training Fund (hereinafter, "Inscoe ITF Decl.") ¶ 7.

Additionally, during the period of November 2021 through June 2023, Defendant failed to submit the requisite reports and failed to pay contributions to the ITF. Compl. ¶ 21. Because Defendant failed to submit its remittance reports during this period, the ITF Trust Agreement permits ITF to calculate Defendant's monthly contributions for the unreported months, using the average amount of Defendant's monthly contributions contained in Defendant's previously submitted remittance reports. Mem. in Supp. of Mot. for Default J at 9; Inscoe ITF Decl. ¶ 9. The ITF declaration in support of its Motion, indicates that this amount is $613.40 for the months of November 2021 through June 2023. Inscoe ITF Decl. ¶¶ 10-11. The ITF Trust Agreement further provides that when an employer fails to pay the amounts required by the CBA, in the discretion of the ITF, the employer will be obligated to pay "liquidated damages for each monthly report or payment due in the amount of twenty percent (20%) of the amount due, plus interest from the date due to the date of payment at a rate of twelve percent (12%) per annum." Compl. ¶ 24. With the unpaid contributions owed for the months of September 2021 and October 2021, Defendant owes the ITF a total of $720.35 in unpaid contributions as well as $128.52 in interest (as of February 9, 2024), and $144.07 in liquidated damages. Inscoe NPF Decl. ¶¶ 7, 11, 14-15. Therefore, the undersigned finds that Defendant owes a total amount of $992.94 to the ITF as a result of its delinquent contributions.

In sum, the undersigned finds that the following amounts are owed to the NPF and ITF:

8

|  | *Delinquent Contributions* | *Liquidated Damages* | *Interest (through 2/9/2024)* | *Total* |
|---|---|---|---|---|
| **NPF** | $34,027.75 | $3,402.78 | $6,008.94 | $43,439.47 |
| **ITF** | $720.35 | $144.07 | $128.52 | $992.94 |
| **Total** | - | - | - | $44,432.41 |

### C. Attorneys' Fees and Costs

Finally, Plaintiff seeks $6,603.25 in attorneys' fees and costs. Mot. for Default J.; Ex. 3, Decl. of Jacob N. Szewczyk, Esq. for Attorney's Fees (hereinafter, "Szewczyk Decl.") ¶ 9. When a plaintiff is awarded judgment to collect unpaid sums under ERISA, the plaintiff is entitled to collect reasonable attorneys' fees and costs of the action. 29 U.S.C. § 1132(g)(2)(D).

Plaintiffs provided a declaration from their attorney and a detailed billing statement in support of their request for attorneys' fees and costs. Szewczyk Decl. In those documents, Plaintiff claims $697.00 in costs and $5,906.25 in attorneys' fees based on 18.75 hours of expended counsel time at a rate of $315.00 per hour for attorneys. *Id.* ¶¶ 5-9. Time spent by counsel includes reviewing and preparing the Complaint, Request for Entry of Default, and the Motion for Default Judgment. *Id.* The undersigned finds these rates to be consistent with reasonable rates charged in the Eastern District of Virginia for like matters and the number of billable hours spent on the case to be reasonable. Therefore, the undersigned finds Plaintiff's request for attorneys' fees and costs to be reasonable and recommends an award of $6,603.25.

### IV. RECOMMENDATION

The undersigned Magistrate Judge recommends entry of default judgment in favor of the Trustees of the United Association National Pension Fund and the Trustees of the International Training Fund. In sum, Plaintiffs are entitled to damages in the total amount of $44,432.41 and attorneys' fees and costs in the amount of $6,603.25, for a total of $51,035.66.

## V. NOTICE

By mailing copies of this Report and Recommendation, the parties are notified that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of service on you of this Report and Recommendation. A failure to file timely objections to this Report and Recommendation waives appellate review of the substance of the Report and Recommendation and waives appellate review of a judgment based on this Report and Recommendation.

May 31, 2024
Alexandria, Virginia

/s/ Ivan D. Davis
Ivan D. Davis
United States Magistrate Judge